420 P.2d 813

Caroline Joyce GONZALES, Plaintiff-
Respondent,

v.

Gene F. HODSDON, Defendant-Appellant.

No. 9671.

Supreme Court of Idaho.

Nov. 29, 1966.

Bandelin & Cogswell, Sandpoint, for appellant.

Stephen Bistline, Sandpoint, for respondent.

SMITH, Justice.

Respondent instituted this action for and on behalf of her eleven-year-old daughter, Cynthia Rae Gonzales, for recovery of general and punitive damages incurred because of alleged lewd and lascivious acts committed by appellant upon and against the person of the child. In his answer appellant admitted committing such acts but denied that they were committed maliciously or that the child was damaged in any way. At the conclusion of a jury trial, the jury returned a verdict of $25,000 general, but no punitive, damages in favor of respondent, followed by entry of judgment thereon. This appeal is from the judgment.

The record on appeal shows that on three occasions between December 1962 and August 1963, appellant committed, and was charged with the criminal offense of engaging in, lewd and lascivious conduct upon and against respondent's daughter, a child under the age of sixteen years. I.C. § 18-6607.

Prior to the criminal trial, appellant declined to engage counsel and placed himself at the mercy of the court. He recognized his need for rehabilitation and volunteered to do as the court might direct.

On August 29, 1963, at the request of appellant and the Bonner County prosecuting attorney, John M. Lambert, M.D., of Spo-kane, Washington, in his professional capacity as a neuropsychiatrist, interviewed appellant. Dr. Lambert summarized the results of his interview in a report, which he addressed to, and with appellant's consent, forwarded to, the prosecuting attorney.

Dr. Lambert's report describes appellant's personal background in detail, concluding the appellant "was able to distinguish right from wrong and was able to adhere to the right and refrain from the wrong." Regarding appellant's conduct toward the child, Dr. Lambert, in his report, stated:

"He [Hodsdon] admitted taking liberties with her and on three occasions, in December, 1962, April, 1963, and August, 1963, these affections on his part were sexual advances. He repeatedly denies having intercourse with her but does admit placing his sex organ against her. He denies ever undressing himself or the girl. At these times he was aware that what he was doing was wrong and he realized also that he could stop when he so desired."

On October 25, 1963, appellant was found guilty of the charged offense of lewd and lascivious conduct, and was sentenced to a term of servitude in a penal institution.

In the subsequent civil proceedings, which are the subject of this appeal, the parties stipulated that Dr. Lambert's report should be treated as a deposition. At the trial when appellant offered to read the report in evidence, respondent objected on general grounds and the trial court sustained respondent's objections.

Appellant assigns as error the ruling of the trial court excluding the entire medical report. Appellant contends that the report, or at least portions thereof constituted competent, relevant and material evidence bearing upon isssues raised in the civil proceedings. Particularly, appellant's counsel stated at the time of offering the report in evidence, that the purpose thereof was "to show the mental state or mental condition or intent of the party committing the act. The reason we are showing that is to go towards the determination by the jury of

the punitive damages." In his brief in support of his assignment of error, appellant asserts that the statements of the doctor, contained in his report, that appellant stated he neither had intercourse with nor undressed the child, if believed by the jury, would rebut her testimony that appellant had sexual relations with her, and "would certainly tend to minimize any damages to be awarded."

The issue presented is whether the medical report in its entirety was properly rejected by the trial court on respondent's objection.

The greater portion of Dr. Lambert's report relates to appellant's family background and his conduct toward the child. The doctor had no first-hand knowledge of appellant's past conduct and relied entirely on appellant's version of the crime and attendant circumstances. The balance of the report presents Dr. Lambert's diagnosis of the appellant's mental and physical condition.

The report does not show that the doctor was administering treatment at the time of the "interview," nor that the statements to the doctor, was contained in the report, were made by appellant to his attending physician in connection with treatment being or to be administered. The most that can be gleaned from the report is that appellant's referral to the doctor and the doctor's "interview" was for the purpose of diagnosis only, and not for treatment. Appellant thus intended that Dr. Lambert's account be accepted for the truth of the facts therein stated; for such purpose, the report was clearly hearsay evidence. Gayhart v. Schwabe, 80 Idaho 354, 330 P.2d 327 (1958); Hilbert v. Spokane International Ry. Co., 20 Idaho 54, 116 P. 1116 (1911); 31A C.J.S. Evidence § 192, p. 519.

■ The evidentiary rules as to the admissibility of medical testimony concerning physical injuries apply to a psychiatrist's testimony pertaining to his patient's emotional trauma or illness. See Lemmon v. Denver and Rio Grande Western Railroad Co., 9 Utah 2d 195, 341 P.2d 215 (1959).

■ Many jurisdictions recognize as an exception to the hearsay rule statements made by a patient to his attending physician descriptive of the history of the case, if such statements are necessary for an accurate diagnosis and treatment of the illness or injury. See, e. g., Brown v. Blauvelt, 152 Conn. 272, 205 A.2d 773 (1964); Jensen v. Elgin, Joliet & Eastern Ry., 24 Ill.2d 383, 182 N.E.2d 211, 94 A.L.R.2d 904 (1962); Edwards v. E. B. Murray & Co., 305 S.W. 2d 702, (Mo.App.1957); Kellogg v. Industrial Commission of Ohio, 60 Ohio App. 22, 19 N.E.2d 511 (1938); Hillman v. Utah Power & Light Co., 56 Idaho 67, 51 P.2d 703 (1935); Boyd v. Industrial Commission of Utah, 88 Utah 173, 48 P.2d 498 (1935); Annot. 130 A.L.R. 977 (1941); 3 Jones, Comm. on Evidence 2234 (2d ed. 1926).

This exception to the hearsay rule is ordinarily justified on the grounds of trustworthiness and necessity. A patient seeking treatment will not be inclined toward deception and fraud. In Hillman v. Utah Power & Light Co., supra, the court noted: "The statements of the history of his case, made to his physician by a patient, who is seeking relief from pain and severe sickness [treatment], are entitled to credit. To state untruly to his doctor the cause of his sickness, would be directly against his most vital interest in saving his health and life." 56 Idaho at 76, 51 P.2d at 706.

The exception relied upon by appellant is significantly limited to statements made under circumstances which indicate that the patient at the time had no other purpose or motive than that of enlightening his physician in order to enable him the better to administer appropriate treatment. Hillman v. Utah Power & Light Co., supra, 56 Idaho at 75, 51 P.2d at 706.

■ The medical report shows that appellant knew criminal proceedings were imminent, and infers that the outcome of subsequent criminal proceedings would in part depend upon the results of Dr. Lambert's interview of appellant. Appellant also knew that the prosecuting attorney was in communication with Dr. Lambert, and

that the psychiatrist acted on behalf of the prosecuting attorney in judging appellant's fitness for trial. Appellant authorized the doctor to forward the report to the prosecutor. Nothing in the record indicates that appellant ever received psychiatric treatment from Dr. Lambert. Under such circumstances most courts refuse to permit the physician to act as the patient's conduit for narrative declarations. See, e.g., Northwest States Util. Co. v. Brouilette, 51 Wyo. 132, 65 P.2d 223, 69 P.2d 623 (1937); Reid v. Yellow Cab Co., 131 Or. 27, 279 P. 635, 67 A.L.R. 1 (1929); 31A C.J.S. Evidence § 246, p. 658; 2 Jones, Evidence 706 (4th ed.1938).

■ Where doubt is cast upon the trustworthiness of the patient's statements by the circumstances of the physician-patient consultation, the trial court should be given considerable discretion in the rejection or reception of such evidence. Hillman v. Utah Power & Light Co., supra, 56 Idaho at 75, 51 P.2d at 706; Reid v. Yellow Cab Co., supra; 2 Jones, Evidence 706 (4th ed. 1938); 6 Wigmore, Evidence 72 (3rd ed. 1940).

Appellant next contends that Dr. Lambert's account of appellant's personal history and of appellant's acts against the child was admissible to establish the basis upon which the doctor formed his opinion that appellant "was able to distinguish right from wrong and was able to adhere to the right and refrain from the wrong."

That a physician may testify as to the reasons for his conclusions, and the fact that he relied upon his patient's statements does not change the rule. In such an instance the patient's statements are not regarded as hearsay; the statements are introduced without regard for the truthfulness of the facts stated, but merely as ob-

served facts forming part of the physician's data. 6 Wigmore, Evidence 70, 71, (3rd ed. 1940); 2 Jones, Evidence 705 (4th ed. 1938); 32 C.J.S. Evidence § 546 (94), p. 356.

■ It may be, as appellant contends, that the trial court committed error in excluding Dr. Lambert's conclusions regarding the appellant's mental condition, as well as the factual statements upon which the doctor based his conclusions. Such proffered evidence bears upon the issue of appellant's malice or other state of mind warranting an award of punitive damages. See Harrington v. Hadden, 69 Idaho 22, 202 P.2d 236 (1949). If the exclusion of such evidence constituted error, it was harmless and did not prejudice appellant, since the jury declined to award any punitive damages to respondent.

■ The general damages awarded to respondent were measurable by the injuries sustained by the child, and evidence pertaining to appellant's mental condition would be irrelevant as affecting that award. Moreover, appellant cannot contend that those facts upon which Dr. Lambert relied in forming his opinion as to appellant's mental condition would influence the jury's award of general damages. Such an argument assumes that the jury would accept any statement of the psychiatrist as truthfully relating the facts contained therein; but in the case at bar, the statements constituted hearsay and were properly excluded by the trial court in its sound discretion.

■ Appellant next assigns as error the giving of Jury Instruction No. 2 which, appellant contends, misled the jury by erroneously indicating that both the mother and child were entitled to recover general damages.[1]

1. *"It is your duty to award general damages to the plaintiff.* In assessing general damages, which are for pain, suffering, mental anguish, humiliation, it is not necessary that any witness should have expressed any opinion as to the amount of such damages. You, Members of the Jury, yourselves, must deter-

mine the amount, from all the facts and circumstances, considering them in connection with your own knowledge, observation and experience in the ordinary affairs of life.

"The law does not fix any exact method by which you can arrive at any amount of general damages which should be

Respondent, the child's mother, was the sole named plaintiff, qualified by allegations in the complaint that she acted in a representative capacity on behalf of the child. The first sentence of Instruction No. 2 is ambiguous as to the damages in issue; but construing the instructions as a whole, it appears that the jury received a correct statement of the facts and theory of the case from which it understood that only the child's injuries were to be considered.

The jury awarded respondent $25,000 general damages for injuries sustained by the child. Appellant contends that such award was so excessive as to raise the inference that it resulted from passion or prejudice.

■ In tort actions, where the damages generally cannot be ascertained with mathematical precision, the amount of damages to be awarded is primarily a question for the jury, and the appellate court should interfere with the verdict only in the most exceptional cases. Gardner v. Hobbs, 69

awarded, and it is for you, in your sound judgment, to determine what sum is reasonable, and *which will fairly compensate Cynthia Rae Gonzales* for the injury sustained, measuring the reasonableness of such compensation by such standards as you consider proper as ordinary men and women of experience.

"In considering the damages, you have a right to consider, and it is your duty

Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478 (1949); Reinhold v. Spencer, 53 Idaho 688, 26 P.2d 796 (1933); Riggs v. Smith, 52 Idaho 43, 11 P.2d 358 (1932). This is particularly true where the injuries sustained are subjective, that is, mental anguish or pain, and measurable with only an approximation of certainty. Mendenhall v. MacGregor Triangle Company, 83 Idaho 145, 358 P.2d 860 (1961); Reinhold v. Spencer, supra; Butler v. Townend, 50 Idaho 542, 298 P. 375 (1931).

■ We fail to find any indication from the record that the jury was biased or prejudiced or arrived at the amount of damages in any irregular manner.

The judgment is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE and TAYLOR, JJ., concur.

SPEAR, J., sat, but did not participate in decision.

to consider, any pain and suffering and mental anguish which *Cynthia Rae Gonzales has had*, and any which she might, with reasonable certainty, be called upon to suffer in the future, occasioned by the wrong *done her* by the defendant." (Emphasis supplied.)